

June 7, 2018

**J. Bruce Maffeo**

Direct Phone  212-883-4951
Direct Fax      917-521-5866
jbmaffeo@cozen.com

**DELIVERED BY ECF AND FEDEX**

Hon. Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

Re:    **SENTENCING MEMORANDUM for Esfrain Silva,**
       **United States v. Starlin Nunez, et al., 17-cr-00438 (VEC)**

Dear Judge Caproni:

I represent Esfrain Silva ("Silva" or "the defendant") in the above-referenced indictment. As Your Honor will recall, on March 5, 2018 Silva pleaded guilty to Count One of the Indictment, which charges a racketeering conspiracy, and his sentencing is scheduled for Thursday, June 14th at 2:00 P.M. Silva allocuted to participating with others in an attempted armed robbery and a robbery, in furtherance of the racketeering conspiracy. He is currently incarcerated, over 5 years into a 7-year sentence based on a 2014 guilty plea to a charge of conspiring to rob pharmacies and several counts of such burglaries or attempted burglaries. Both cases involve several defendants in common, and the instant racketeering charge specifically references the pharmacy burglaries as one of the goals of the conspiracy. Given the substantial overlap between the two cases and the considerable term of incarceration previously imposed on Silva in the first, the defense respectfully joins in the probation officer's recommendation that a significant variance is warranted.

**BACKGROUND**

As the foregoing suggests, the procedural history of Silva's indictments is anything but simple. Silva was indicted on this case on July 12, 2017 as the last defendant listed on a caption of 13 charged with racketeering predicated on various underlying offenses. Some of the defendants are charged with murder in the course of robbery, but most, including Silva, are charged with robbery, and related drug and gun charges. While Silva was significantly involved in the pharmacy burglaries (to which he previously pleaded guilty), he "was an associate of the Hot Boys," rather than a member, and he allocuted to participating in only two robberies in the instant case. (Final Pre-Sentence Report ("PSR") ¶¶ 26-30, 75.)

Silva has been incarcerated since October 24, 2013 when he was ordered to self-surrender pursuant to his guilty plea in *United States v. Silva*, 12-cr-00298 (TPG)) (Docket Entry 22 in that case). Before that, he served more than an additional 6 months of pretrial detention in the same case, which involved pharmacy burglaries in which Silva was the only defendant (for a total of approximately 19 months of presentence detention). (PSR at 27.) While that case was pending, the government also charged Silva and 19 others in *United States v. Edwin Araujo, et al.*,

Hon. Valerie E. Caproni
June 7, 2018
Page 2

13-cr-00811 (ALC), which alleged a conspiracy to burglarize pharmacies from 2010 through 2013. That case terminated in *nolle prosequi* as to Silva based on his guilty pleas in 12-cr-00298 (TPG). Silva was in prison when the current indictment was filed, serving a sentence of 84 months' incarceration based on his guilty plea on September 12, 2013 (later withdrawn followed by yet another guilty plea in 12-cr-00298 (TPG) on August 19, 2014 due to the government's intervening filing of a superseding information in August 2014 (Docket Entry 26)), and the November 12, 2014 imposition of sentence. (PSR ¶ 75.)

As the parties agreed in the signed Plea Agreement in this case, the sentence that Silva is currently serving "relates to a conviction for conduct that was part of the instant offense and this conviction occurred after the last overt act of the conspiracy in which the defendant participated." (Plea Agreement at 3.) As previously noted, the charged racketeering indictment in the case pending before Your Honor specifically encompassed the criminal activity that was the subject of Silva's prior case, for which he currently is incarcerated. The indictment states that "[m]embers and associates of the Hot Boys committed multiple burglaries of pharmacies and other locations throughout the New York City area in order to obtain controlled substances, cash, and other valuable items stored therein." (Indictment ¶ 5.)[1]

As a result of this piecemeal prosecution, Silva has now pleaded guilty three times (twice in the first case, once withdrawn) to conspiracies that overlap with respect to time period, goals, many of the defendants, and general geographic area. As the PSR notes, BOP has calculated Silva's release on his previous plea for August 2019. (PSR at 27.) In anticipation of that release date, Silva successfully completed several classes while incarcerated in an effort to serve his time productively, including spending hundreds of hours earning his GED. (*See* Inmate Education Data Transcript, GED Test Results, and BOP sentence computation data, attached hereto as Exhibit A.) Notwithstanding his efforts, Silva now finds himself facing the prospect of substantial additional incarceration for offenses he committed more than five years ago.

## SENTENCING GUIDELINES CALCULATIONS

Pursuant to the written plea agreement, Silva had an adjusted offense level of 25, after taking into account the multiple count analysis and credit for acceptance of responsibility. The "rap sheet" available to the parties at the time of the plea placed Silva in Criminal History Category ("CHC") II. The plea agreement therefore indicated a United States Sentencing Guidelines ("USSG") range of 63 to 78 months' incarceration. (PSR ¶ 11.)

The PSR's Guidelines calculations differ from the written plea agreement only with respect to the CHC, assessing an additional point for a 2007 youthful offender adjudication for criminal possession of a controlled substance in the fifth degree which resulted in a sentence to one year of probation. This conviction occurred when Silva was 14 years old, more than 10 years ago, and nearly five years before each of the two robberies to which Silva pleaded in this case, although the charged conspiracy was carried on before and after those two robberies. The 2007

---

[1] For context, we also note that the government charged an overlapping set of defendants (not including Silva) under the Hobbs Act, and with related offenses in *United States v. Avalo, et al.*,16-cr-00108 (WHP). There, Judge Pauley sentenced Martin Avalo (also charged in *United States v. Edwin Araujo, et al.*, 13-cr-00811 (ALC)), Alvarado Dominguez (also charged in the present case, as well as in *United States v. Araujo, et al.*, 13-cr-00811 (ALC)), and Carlos Vallejo (also charged in *United States v. Edwin Araujo, et al.*, 13-cr-00811 (ALC)) to sentences to run concurrent to their sentences in 13-cr-00811 (ALC) (except for sentences on the 18 U.S.C. § 924(c) count, which are statutorily prohibited from running concurrently, 18 U.S.C. § 924(c)(1)(D)(ii)).

Hon. Valerie E. Caproni
June 7, 2018
Page 3

_____

conviction elevates Silva's CHC from three points to four, and therefore moves him from CHC II to CHC III.

The independent guidelines calculations in the PSR therefore assess an offense level of 25 and a CHC of III, which indicates a guidelines range of 70 to 87 months' incarceration. The PSR also quotes the Guidelines in noting that "[p]ursuant to USSG § 5G1.3(d), the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." (PSR ¶ 119.) The PSR recommends a sentence of "36 months, to run consecutively to" Silva's current sentence from 12-cr-00298-01(TPG). (PSR at 26.)

During the course of plea negotiations, defense counsel specifically raised with counsel for the government Silva's ability to argue for a sentence that incorporates USSG § 5G1.3, and understood that we were free to do so as long as we were not seeking a departure under Chapter 5, Part K.[2] Indeed, the defense's ability to make that argument was a central factor in Silva's decision to plead guilty. Based upon that understanding, defense counsel initially wrote to the probation officer as he prepared the PSR, copying the government, and sought an adjustment under § 5G1.3(b). Specifically, the defense argued that Silva's sentence in the present case should be (1) imposed to account for the period of imprisonment that he has already served on his previous 2013/2014 burglary conviction, and (2) run concurrently to the rest of his ongoing term of imprisonment for the 2013/2014 conviction. (J. Bruce Maffeo letter to USPO Nicolo DiMaria sent via e-mail Apr. 20, 2018, copying via e-mail AUSAs Justina Geraci, Hagan Scotten, and David Denton, attached hereto as Exhibit B.) The government objected, arguing in substance that to the extent an adjustment to Silva's sentence was sought under § 5G1.3(b), Silva's prior conviction for the pharmacy burglaries would have had to be included in determining his offense level in contravention of the stipulated (and more favorable to the defendant) calculation contained in the plea agreement. The government contended that the plea agreement's omission of the prior conviction from the offense level implied an agreement that the pharmacy burglaries are not relevant conduct. (AUSA Hagan Scotten e-mail to USPO Nicolo DiMaria sent Apr. 25, 2018, attached hereto as Exhibit C.) The government argued that the omission evidences an agreement, despite the pre-agreement discussion during which the defense advised the government that it intended to raise an argument under § 5G1.3. (*See* n.2) The final version of the PSR notes the dispute between the parties on the applicability of § 5G1.3(b), and ultimately resolves the issue by advocating a variance, citing to the policy statement contained in § 5G1.3(d) and recommending a sentence to an additional 36 months' imprisonment based on the current conviction. (PSR at 24, 26, 27, 28.)

As Your Honor is aware, Section 5G1.3 is simply a formalization of the self-evident concept that a defendant's sentence for the same offense or set of offenses should not vary significantly depending on how and when the government chooses to charge those offenses. As the Supreme Court explained in *Witte v. United States*, the purpose of USSG § 5G1.3 is to:

> attempt[ ] to achieve some coordination of sentences imposed [in situations involving multiple proceedings for related offenses] with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the

_____

[2] The discussion did not address the relationship between § 5G1.3(b) and the inclusion of conduct from Silva's previous case in the offense level calculation in the present case. The written plea agreement was also silent on this issue.

Hon. Valerie E. Caproni
June 7, 2018
Page 4

> different offenses been imposed at the same time (*i.e.*, had all of the offenses been prosecuted in a single proceeding).

515 U.S. 389, 404-05 (1995) (citing USSG § 5G1.3, comment, n.3).

Whether or not the Court chooses to apply § 5G1.3(b) here, we respectfully ask the Court to consider the impact of the government's charging decisions on Silva, who was not charged in the present case until he was within two years of his estimated release date. Accordingly, we ask the Court to consider a downward variance in Silva's sentence, and, if appropriate based on the term, to order that it run concurrent to the undischarged portion of Silva's previous sentence.

An analysis of the guidelines calculation incorporating § 5G1.3, taking into account the government's reading of that provision, may assist the Court in determining an appropriate sentence. That section provides:

> (a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.
>
> **(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct), [3] the sentence for the instant offense shall be imposed as follows:**
>
> > **(1) the court shall [4] adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court**

---

[3] Relevant conduct: "(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity;

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a).

[4] Of course, since the opinion in *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are not mandatory. Still, § 5G1.3(b) says the Court "shall" adjust for time served on an undischarged sentence, and "shall" impose the new sentence to run concurrent to the old. We have not found case law in this Circuit holding that where § 5G1.3(b) is applicable, it is no longer mandatory; in fact, the case law implies that concurrence may well still be mandatory. *See United States v. Ritter*, 700 Fed. Appx. 10, 13 (2d Cir. 2017), *as corrected* (Aug. 9, 2017) (Assuming, without explicitly holding, that § 5G1.3 concurrence is still mandatory where applicable: "Section 5G1.3(b) of the U.S. Sentencing Guidelines (which requires concurrent sentences) applies only in situations 'in which *all* of the prior offense is relevant conduct.'[] 'Cases in which only part of the prior offense is relevant conduct to the instant offense are covered under subsection (d).' [] Under § 5G1.3(d), the district court has discretion to impose a sentence concurrently or consecutively, as it chooses." (quoting U.S.S.G. § 5G1.3 cmt. n.2(A); citing U.S.S.G. § 5G1.3(d))); *United States v. Lucas*, 745 F.3d 626, 628 (2d Cir. 2014) ("The language of § 5G1.3(b) is mandatory. However, as will be seen below, we can dispose of this case without expressing any view as to the extent to which that guideline retains mandatory force after *United States v. Booker*, 543 U.S. 220 (2005).").

Hon. Valerie E. Caproni
June 7, 2018
Page 5

>    determines that such period of imprisonment will not be credited to the
>    federal sentence by the Bureau of Prisons [5]; and
>
>    (2) the sentence for the instant offense shall be imposed to run concurrently to
>    the remainder of the undischarged term of imprisonment.
>
>    . . .
>
>    (d) (Policy Statement) In any other case involving an undischarged term of
>    imprisonment, the sentence for the instant offense may be imposed to run
>    concurrently, partially concurrently, or consecutively to the prior undischarged
>    term of imprisonment to achieve a reasonable punishment for the instant offense.

USSG § 5G1.3 (emphasis added). *See also, e.g., United States v. Lucas*, 745 F.3d 626, 628
(2d Cir. 2014) ("The Sentencing Guidelines instruct district courts to run a prison term
'concurrently to the remainder of [any] undischarged term of imprisonment' if the recommended
'term of imprisonment resulted from another offense that is relevant conduct to the…offense of
conviction.' [ ] In other words, when the defendant is serving time on a prior conviction that
relates to the new charge, the Guidelines direct that the defendant serve the new sentence
parallel to the old." (citing U.S.S.G. § 5G1.3(b).)); *United States v. Rivers*, 329 F.3d 119, 121-23
(2d Cir. 2003) (affirming district court's downward adjustment of sentence to reflect time served
in undischarged state sentence, which resulted in federal term of imprisonment under five-year
statutory mandatory minimum, where state sentence had already been credited against another
sentence so was not going to be credited by BOP under 18 U.S.C. § 3585(b)) (collecting cases);
*see also United States v. Bannister*, 786 F. Supp. 2d 617, 687 (E.D.N.Y. 2011).

The PSR's independent Guidelines calculation, like the written plea agreement, notes that no
criminal history points are added for the 2013/2014 guilty plea, "[p]ursuant to USSC
§§4A1.2(a)(1) and 2E1.1, n.4, because this sentence relates to a conviction for conduct that
was part of the instant offense and occurred after the last overt act of the racketeering
conspiracy." (PSR ¶ 75; *see also* Plea Agreement at 3.) The Guidelines' definition of "relevant
conduct" (*supra* n.3) at least arguably includes on its face "conduct that was part of the instant
offense," as the plea agreement and PSR describe Silva's conduct from the 2013/2014
conviction.

However, the government argues that because the offenses that were part of Silva's 2013/2014
conviction were not used in the PSR (or the written plea agreement) to calculate Silva's offense
level in the current case (as relevant conduct), they cannot be considered as relevant conduct
for the purpose of applying § 5G1.3, either. (PSR at 24.)

Without the application of § 5G1.3(b), an offense level of 25 and a CHC of III result in a
guidelines range of 70 to 87 months' incarceration. If that term were simply run consecutively to
Silva's 84 months on the previous case, he would serve 154 to 171 months in total. However,
under that framework, in a situation involving an undischarged term of imprisonment for conduct
other than relevant conduct, "the sentence for the instant offense may be imposed to run

---

[5] 18 U.S.C. § 3585(b) provides that time in detention will be credited toward a term of imprisonment where
that time "has not been credited against another sentence." Here, the time Silva has served has been credited
against his prior sentence, so it appears that BOP will not credit it against Silva's sentence in the current case. *See,
e.g., United States v. Rivers*, 329 F.3d 119, 122 n.1 (2d Cir. 2003).

Hon. Valerie E. Caproni
June 7, 2018
Page 6

concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." USSG § 5G1.3(d). According to the BOP, Silva's current projected release date, counting good-time credit, is August 16, 2019. (PSR at 27.) If the sentences were to run completely concurrently, they would run in parallel for approximately 14 months. As previously noted, because the government elected to wait to charge Silva in the present case until the majority of his previous sentence had already run, concurrence is less significant to Silva's total term of imprisonment than it would have been had the government charged this second case sooner—closer in time to the first case, or to the acts to which Silva has pleaded guilty.

However, if Silva's acts from the prior case were counted as relevant conduct in calculating both the offense level and the adjustment under § 5G1.3(b), the Guidelines range would expand at both ends, but the five-plus years that Silva has already spent incarcerated would result in a downward adjustment for time-served, and his sentences would run concurrently going forward. The previous case involved a count alleging conspiracy to burglarize pharmacies, which carries an offense level of 30.[6] With respect to the multiple count analysis, as in the sentencing in the previous case, the additional counts there bore an offense level ranging from 14 to 17. Because these are all more than 8 levels lower than the highest count, they do not increase the offense level. USSG § 3D1.4(c). The current PSR assesses that the two acts to which Silva allocuted carry offense levels of 22 and 26, respectively. The grouping analysis for these three offense levels results in 2.5 units, adding 3 levels, for an offense level of 33. USSG § 3D1.4. Reducing that by 3 levels for timely acceptance of responsibility results in a total offense level of 30. USSG § 3E1.1. With a CHC of III, the Guidelines range is 121 to 151 months. Silva was sentenced to 84 months in the previous case on November 12, 2014. Before that conviction, he spent approximately 19 months in presentence detention. (PSR at 27.) Therefore, as of June 14, 2018, Silva will have served approximately 62 months on the 2013/2014 conviction (43 months post-conviction plus 19 months pre-conviction). Adjusting the Guidelines range of 121 to 151 months (assuming he had been charged for everything in both cases at once) downward by the 62 months he has already served towards that term, Silva's Guidelines range in the current case is an additional 59 to 89 months' incarceration (i.e., after subtracting 62 months from each of 121 and 151 months). Under § 5G1.3(b), the term of imprisonment that the Court imposes on the current case should run concurrent to Silva's current term to result in a total time served equal to the sentence that would have been imposed had all of the counts been charged at once. With a good-time release date in August 2019, concurrent sentencing results in approximately 14 months of concurrence from June 2018.

A third approach is more straightforward and might be more helpful. If Silva had been charged with all of the counts in one case instead of two, his Guidelines range would have been 121 to 151 months' incarceration, as described in the previous paragraph. He was initially sentenced to 84 months' incarceration. Therefore, to achieve the Guidelines range by adding to the original term of imprisonment, the Guidelines would recommend a consecutive sentence of 37 to 67 months' incarceration (84 subtracted from each of 121 and 151).

---

[6] The drug quantity table in effect in August 2014 assessed an offense level of 32 for 1,000 to 3,000 kg of marihuana (or equivalency), putting Silva's 1,783.35325 (equivalent) kg of marihuana at 32. The current Guidelines (effective November 1, 2016) now assess 1,000 to 3,000 kg of marihuana at level 30, USSG § 2D1.1(c)(5), pursuant to Guidelines Amendment 782, effective Nov. 1, 2014 (*available at* https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2016/APPENDIX_C_Supplement.pdf at 64, 73) ("Section 2D1.1(c)(5) (as so redesignated) is amended by striking 'Level 32' and inserting 'Level 30'"). Pursuant to USSG § 1B1.11(a), "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."

Hon. Valerie E. Caproni
June 7, 2018
Page 7

To compare the first two approaches side-by-side:

| | Conduct in prior case is not Relevant Conduct | Conduct in prior case is Relevant Conduct |
|---|---|---|
| **CHC** | III | III |
| **Offense Level** | 25 | 30 |
| **Guidelines Range** | 70 to 87 | 121 to 151 |
| **Downward adjustment for time served on undischarged prior sentence** | n/a | 62 months (5G1.3(b)(1)) |
| **Effective Guidelines Range after adjustment for time served** | 70 to 87 | 59 to 89 months [(121-62) to (151-62)] |
| **Prospective Concurrence** | Discretionary, up to the 14 months remaining in the previous sentence (5G1.3(d)) | 14 months (5G1.3(b)(2)) |
| **Effective additional imprisonment due to present case** (i.e., as if the 2 sentences were to run consecutively) | 56 to 87 months [(70 to 87)(0-14, per Court's discretion)] | 45 to 75 months [(59-14) to (89-14)] |

\*          \*          \*

Byzantine Guidelines analyses complete, we note that ultimately the PSR recommends that the Court sentence Silva to an additional 36 months based on the present case, to be run consecutive to Silva's current sentence in 12-cr-00298 (TPG):

> Additionally, taking into account the defendant's lack of youthful guidance, reported substance abuse history, and relatively young age, a sentence below the advisory Guidelines range is warranted. With due consideration to the defendant's undischarged term of imprisonment as well as the previously discussed factors, we believe a term of 36 months' imprisonment would be sufficient, but not greater than necessary, to comply with the factors to be considered in imposing a sentence outlined in 18 U.S.C. § 3553(a).

(PSR at 27; *see also* PSR at 28.)

Hon. Valerie E. Caproni
June 7, 2018
Page 8

_____

Given the above analyses that demonstrate that Silva's Guidelines range would have been lower but for the successive cases, as well as the additional factors identified by the Probation Office, we respectfully request that the Court consider granting Silva a downward variance to achieve a sentence that comports with the ends of 18 U.S.C. § 3553(a).

**CONCLUSION**

For the foregoing reasons and those described in the PSR, we respectfully request that Your Honor adjust or vary Silva's sentence downward from the recommended Guidelines range, and that Your Honor consider running Silva's sentence in the current case concurrent to his previous sentence for the 2013/2014 conviction.

Sincerely,

COZEN O'CONNOR

By:    J. Bruce Maffeo

JBM
Attachments

cc:    AUSAs David Denton, Hagan Scotten, Justina Geraci, and Anden Chow (*via ECF*)
       USPO Nicolo DiMaria (*via e-mail to Nicolo_DiMaria@nysp.uscourts.gov*)
       Esfrain Silva (*via U.S. Mail*)

# Exhibit A

```
BROHT            *        INMATE EDUCATION DATA        *    02-20-2018
PAGE 001 OF 001 *              TRANSCRIPT              *    13:14:21

REGISTER NO: 66461-054    NAME..: SILVA                     FUNC: PRT
FORMAT.....: TRANSCRIPT    RSP OF: BRO-BROOKLYN MDC


------------------------ EDUCATION INFORMATION -------------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
BRO  ESL HAS   ENGLISH PROFICENT         01-16-2015 0905 CURRENT
BRO  GED EARNED GED EARNED IN BOP        04-04-2016 1459 CURRENT


------------------------- EDUCATION COURSES ---------------------------
SUB-FACL  DESCRIPTION               START DATE  STOP DATE EVNT AC LV  HRS
ALM       RP3-FINANCIAL PEACE UNIV CLS 03-27-2017 05-31-2017  P  C  P   14
ALM       RP2-NETWORKING & INTERVIEW SKL 03-27-2017 05-31-2017  P  C  P   14
ALM       RP2: SERVSAFE FOOD HNDLR CERT 05-17-2017 05-17-2017  P  C  P    5
ALM       PR ANGER MANAGEMENT ENROLLED 01-09-2016 04-03-2017  P  C  P   12
ALM       RP3-FDIC MONEY SMART - PART1 01-30-2017 03-30-2017  P  C  P   20
ALM       ACE SERVSAFE FOOD HANDLER PROG 01-09-2017 01-11-2017  P  C  P    5
ALM       GED 11:30 - 1:30 WILLIAMS   04-14-2015 04-04-2016  P  C  P  292
ALM       ACE FAMILY TIES AFTER PRISON 01-11-2016 03-01-2016  P  C  P   16
ALM       ACE GED MATH                01-11-2016 03-01-2016  P  C  P   16
ALM       ACE SPAN GED                01-11-2016 03-01-2016  P  C  P   16
ALM       ACE SPAN GED                10-13-2015 12-01-2015  P  C  P   16
ALM       ACE BUSINESS EDUCATION      07-08-2015 08-26-2015  P  C  P   16
ALM       LANDSCAPE INSTALLATION ACE CL 04-08-2015 05-27-2015  P  C  P   16
ALM       ENGINEERING ACE CLASS       04-07-2015 05-26-2015  P  C  P   16
ALM       RESUME CLASS FOR JOB FAIR   04-08-2015 05-01-2015  P  C  P   20
NYM M     BEGINNING SKETCHING         06-28-2012 07-08-2012  P  C  P    6


------------------------- HIGH TEST SCORES ----------------------------
TEST      SUBTEST       SCORE     TEST DATE      TEST FACL  FORM    STATE
GED       AVERAGE       486.0     03-21-2016     ALM        PASS    DC
          LIT/ARTS      540.0     02-29-2016     ALM        IJ      DC
          MATH          480.0     02-29-2016     ALM        IJ      DC
          SCIENCE       490.0     02-29-2016     ALM        IJ      DC
          SOC STUDY     460.0     03-21-2016     ALM        IC      DC
          WRITING       460.0     02-29-2016     ALM        IJ      DC
TABE D    BATTERY       4.7       08-13-2012     NYM        9
          LANGUAGE      2.4       08-13-2012     NYM        9
          MATH APPL     6.0       08-13-2012     NYM        9
          MATH COMP     5.1       08-13-2012     NYM        9
          READING       7.4       08-13-2012     NYM        9
          TOTAL MATH    5.6       08-13-2012     NYM        9
          VOCABULARY    4.0       08-13-2012     NYM        9



G0000      TRANSACTION SUCCESSFULLY COMPLETED
```

# GED Official Transcript of GED® Test Results

TESTING SERVICE®

Official Transcript
Issued Under the Auspices of
GED Testing Service.
For information about additional transcripts,
visit www.GEDtestingservice.com

**Candidate's Name**

Last: Silva    First: Esfrain    Middle Initial:

Address: Pobbox 2500, White Deer, PA 17887

Phone Number:

Date of Birth: 5/9/1993    Social Security Number(if required):

Issue Date: 03/21/2016    Reported to: Fbop

Test Format: Paper

Examiner's Signature _____  4/6/2016  Date
Center Name:  GED Testing Service
Center Identification No.:  9000411112
Phone Number:  877-392-6433
Center Address:  www.GEDtestingservice.com

| | TEST DATE | TEST FORM | **STANDARD SCORE | PERCENTILE RANK | INDIVIDUAL TEST STANDARD SCORE |
|---|---|---|---|---|---|
| Language Arts, Reading | 02/29/2016 | LI | 540 | 66 | 540 |
| Language Arts, Writing | 02/29/2016 | LI | 460 | 34 | 460 |
| Mathematics | 02/29/2016 | LI | 480 | 42 | 480 |
| Science | 02/29/2016 | LI | 490 | 46 | 490 |
| Social Studies | 03/21/2016 | IC | 460 | 34 | 460 |

| | | PASS | NON-PASS |
|---|---|---|---|
| Standard Score Total | 2430 | | |
| Battery Average | 486 | X | |

200    410*** (see reverse)    Below ——————— Above    800

200    450 AVERAGE SCORE    Below ——————— Above    800

** Standard Score. The scores on this report are the highest scores achieved by the candidate and not necessarily the most recent. If retest scores are lower than scores previously achieved, the retest scores are not reported.

*Pass or Non-Pass as determined by jurisdictional policy.

**TOTAL BATTERY**

You have demonstrated the 21st century skills of Communication, Information processing, Problem solving, and Higher-order thinking skills in the five test areas (Reading, Writing, Mathematics, Science, and Social Studies) to perform effectively in the workplace or in higher education.

**Language Arts, Reading**

Your score meets or exceeds the GED passing score requirement. You demonstrated essential reading skills in the following areas: comprehending, analyzing, evaluating, and synthesizing workplace and literary texts.

**Science**

Your score meets or exceeds the GED passing score requirement. You demonstrated essential skills in the following areas: understanding, interpreting, and applying concepts of life, physical, and space sciences; physics, and the ability to visual and written text from academic and workplace contexts.

**Language Arts, Writing**

Your score meets or exceeds the GED passing score requirement. You demonstrated essential English skills in the following areas: using the elements of standard English to edit workplace informational documents and to generate well-organized and developed written text.

**Social Studies**

Your score meets or exceeds the GED passing score requirement. You demonstrated essential skills in the following areas: understanding, interpreting, applying key history, geography, economics, and civics concepts and principles to visual and written text from academic and workplace contexts.

**Mathematics**

Your score meets or exceeds the GED passing score requirement. You demonstrated essential skills in the following areas: understanding and interpreting mathematical concepts in algebra, data analysis, statistics, geometry, and number operations applied to visual and written text from academic and workplace contexts.

GEDTS Form 30-2012

# WHAT DOES THE GED® TEST MEASURE?

The GED® Test consists of five content area tests which measure achievement in subjects associated with a high school program of study. The five tests, and their relative content emphases, are:

1. *LANGUAGE ARTS, READING*: Literary Texts (poetry; drama; prose fiction before 1920, between 1920-1960, and after 1960) (75%); Nonfiction Prose (25%).

2. *LANGUAGE ARTS, WRITING Part I*: Organization (15%); Sentence Structure (30%); Usage (30%); Mechanics (25%); *Part II:* Essay (45-minute direct writing exercise).

3. *MATHEMATICS,* Number Operations and Number Sense (25%); Measurement and Geometry (25%): Data Analysis, Statistics, and Probability (25%); Algebra, Functions, and Patterns (25%)

4. *SCIENCE*: Life Science (45%): Earth and Space Science (20%); Physical Science (Chemistry and Physics) (35%).

5. *SOCIAL STUDIES*: National History (25%); World History (15%); Economics (20%); Civics and Government (25%) Geography (15%).

The GED® Test is taken by adults who have not graduated from high school and who wish to demonstrate a level of educational achievement sufficient to earn a high school credential. The tests are administered regularly at more than 3,200 Official GED Testing Centers throughout the United States and Canada.

## INTERPRETING GED® TEST RESULTS

Performance on the GED® Test is reported in two ways:

### (1) *Standard scores & percentile ranks*

Results on each of the five content area tests are given as "standard scores" ranging from 200 to 800 and "percentile ranks" ranging from 1 to 99; higher scores result from correctly answering more test questions. Both scores compare the candidate's results to those for a recent representative national sample, or norm group, of graduating high school seniors. The percentile rank shows the percentage of the graduating seniors who earned scores at or below those of the candidate. For example, if a candidate's score is 450 with a percentile rank of 31, those numbers indicate that 31% of graduating high school seniors earned a score of 450 or lower.

### ***(2) *Pass or Non-Pass*

The passing standard for the 2002 Series GED® Test is a minimum of 410 on each of the five content area tests AND an average (mean) score of 450 (equivalent to a total score of 2,250) on the total GED® test. This 410 and 450 passing standard is the minimum passing standard set by GED Testing Service. Each state, province, and territory may set a passing standard that exceeds the GED Testing Service minimum requirement for earning a high school credential, but may not go below the GED Testing Service requirement. Adults who pass the GED® Test earn scores that meet or exceed the performance of that demonstrated by 40% of traditional high school graduates. If the candidate's scores meet or exceed the required passing standard, the "PASS" box is marked. If not, the "NON-PASS" box is marked. If the candidate has not taken all five content area tests, "INCOMPLETE" is marked. Candidates who do not meet the passing standard can retake the GED® Test in order to raise the scores. The local GED Examiner ™ can provide information about retesting. Generally, further study is recommended in those content areas in which a candidate earns a standard score of 350 or below. These candidates are encouraged to contact local adult education programs and enroll in instructional classes.

A detailed description of the test and the passing standard is given in the GED Testing Service publication, Technical Manual: 2002 Series GED Test, found at www.GEDtestingservice.com

**IF YOU PHOTOCOPY THIS DOCUMENT, THE WORD "COPY" WILL APPEAR, PRODUCING AN UNAUTHORIZED DOCUMENT.**

GED® and GED Testing Service® are registered trademarks of the American Council on Education. Used under license. Copyright© 2012 GED Testing Service LLC. All rights reserved.

```
BROK2  540*23 *            SENTENCE MONITORING          *    05-23-2018
PAGE 001         *         COMPUTATION DATA             *    13:20:10
                           AS OF 05-23-2018

REGNO..: 66461-054 NAME: SILVA, ESFRAIN


FBI NO...........: 913787ED2          DATE OF BIRTH: 05-09-1993  AGE:  25
ARS1.............: ALM/FED WRIT        ARS2.........: BRO/A-HLD
UNIT.............: I                   QUARTERS.....: IC2-605U
DETAINERS........: NO                  NOTIFICATIONS: NO

HOME DETENTION ELIGIBILITY DATE: 02-16-2019

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  08-16-2019 VIA GCT REL


----------------------CURRENT JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION..........: NEW YORK, SOUTHERN DISTRICT
DOCKET NUMBER..................: 1:(S2)12 CR.00298-01
JUDGE..........................: GRIESA
DATE SENTENCED/PROBATION IMPOSED: 11-12-2014
DATE COMMITTED.................: 01-15-2015
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO

                  FELONY ASSESS MISDMNR ASSESS FINES        COSTS
NON-COMMITTED.: $1,300.00      $00.00        $00.00       $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO      AMOUNT:  $00.00

  REMARKS.......: 1:(S2)12 CR.00298-01(TPG)

-----------------------CURRENT OBLIGATION NO: 010 ---------------------------
OFFENSE CODE....:  052
OFF/CHG: 18:2118(D) CONSPIRACY TO BURGLARIZE PHARMACIES OF CONTROLLED
         SUBSTANCES, CT 1; 18:2118(B) & 2 BURGLARY OF A PHARMACY OR
         ATTEMPTED BURGLARY OF A PHARMACY, CTS 2 THRU 13

SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:    84 MONTHS
TERM OF SUPERVISION............:     3 YEARS
DATE OF OFFENSE................: 04-30-2012




G0002      MORE PAGES TO FOLLOW . . .
```

```
   BROK2   540*23 *           SENTENCE MONITORING           *     05-23-2018
PAGE 002 OF 002 *            COMPUTATION DATA              *     13:20:10
                             AS OF 05-23-2018
```

REGNO..: 66461-054 NAME: SILVA, ESFRAIN


-----------------------CURRENT COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-27-2017 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 01-29-2015 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010

```
DATE COMPUTATION BEGAN..........: 11-12-2014
TOTAL TERM IN EFFECT............:    84 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:     7 YEARS
EARLIEST DATE OF OFFENSE........: 04-30-2012

JAIL CREDIT.....................:   FROM DATE    THRU DATE
                                   03-17-2012    03-23-2012
                                   05-12-2012    11-16-2012
                                   10-24-2013    11-11-2014

TOTAL PRIOR CREDIT TIME.........: 580
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 238
TOTAL GCT EARNED................: 165
STATUTORY RELEASE DATE PROJECTED: 08-16-2019
EXPIRATION FULL TERM DATE.......: 04-10-2020
TIME SERVED.....................:     5 YEARS      1 MONTHS      13 DAYS
PERCENTAGE OF FULL TERM SERVED..:  73.0

PROJECTED SATISFACTION DATE.....: 08-16-2019
PROJECTED SATISFACTION METHOD...: GCT REL
```

REMARKS.......: 01-15-15: COMP ENTERED. D/SPS  01-29-15: J/C UPDATED. D/SPS
                04-27-17:DIS GCT D/SIG.


GC000       TRANSACTION SUCCESSFULLY COMPLETED

# Exhibit B



April 20, 2018

**J. Bruce Maffeo**
Direct Phone   212-883-4951
Direct Fax      917-521-5866
jbmaffeo@cozen.com

**VIA E-MAIL (NICOLO_DIMARIA@NYSP.USCOURTS.GOV)**

Nick DiMaria
United States Probation Officer
U.S. Probation Office - SDNY
500 Pearl Street 7th Floor
New York, NY 10007

Re:     **Pre-Sentence Report on Esfrain Silva, 17-cr-00438**

Dear Mr. DiMaria:

As you prepare the pre-sentence report regarding our client, Esfrain Silva, we write to bring an issue to your attention with respect to the application of the U.S. Sentencing Guidelines.

Esfrain Silva has been in prison since October 23, 2013 (the date he was ordered to self-surrender, Docket Entry 22 in case no. 12-cr-00298(TPG)). He was in prison when the current indictment was filed, serving a sentence of 84 months' imprisonment based on his guilty plea on September 12, 2013 (later withdrawn and followed by yet another guilty plea in the same case on August 19, 2014), and the November 17, 2014 imposition of sentence in a case involving pharmacy burglaries. In fact, Silva has been charged in three separate cases with the same general robbery activity. He has now pleaded guilty to the same set of robbery activity no fewer than three times. First, he was charged by complaint as the only defendant in 12-mj-00732, with a later related indictment filed under case number 12-cr-00298(TPG). Silva entered a guilty plea in case number 12-cr-00298 in September 2013. However, in October 2013, before he was sentenced, the government charged 13 defendants (later increased to 20), including Silva, with a conspiracy to burglarize pharmacies from 2010 through October 2013 (13-cr-00811(ALC)). (That case also charged other defendants, but not Silva, with a narcotics conspiracy and obstruction of justice.) After reaching a new plea agreement with the government, he withdrew the previous guilty plea and pleaded guilty again on August 19, 2014 in case number 12-cr-0298 to a conspiracy to burglarize pharmacies and several counts of such burglaries or attempted burglaries. In the present case, Silva is charged with participation in a racketeering conspiracy and narcotics conspiracy which lasted, with respect to at least some of the defendants, from 2006 through 2017. The conspiracy charges encompass both pharmacy burglaries (to which Silva previously pleaded guilty) as well as home invasions and a related firearms offense. (Indictment ¶¶ 1, 4, 5, 11, 18, 22.) While the indictment is notably unspecific, the government has informed us that their evidence suggests that Silva was involved in two home invasions, during one of which a co-defendant possessed a firearm. (Plea agreement at 2-3.)

As set forth in the signed Plea Agreement in this case, the sentence that Silva is currently serving "relates to a conviction for conduct that was part of the instant offense and this conviction occurred after the last overt act of the conspiracy in which the defendant participated." (Plea Agreement at 3.) The indictment in this case underscores that the

LEGAL\35541399\1

Nick DiMaria
April 20, 2018
Page 2

---

racketeering conspiracy charged here includes activity that was the subject of Silva's prior case, for which he is currently serving a term of incarceration. Specifically, the indictment states that "[m]embers and associates of the Hot Boys committed multiple burglaries of pharmacies and other locations throughout the New York City area in order to obtain controlled substances, cash, and other valuable items stored therein." (Indictment ¶ 5.)

Because Silva is serving and has served a substantial sentence for conduct that is relevant to the present case, we submit that, under Sentencing Guideline (U.S.S.G.) § 5G1.3(b), "Imposition of a sentence on a defendant subject to an undischarged term of imprisonment or anticipated state term of imprisonment," and 18 U.S.C. § 3553, "Imposition of a sentence," Silva's sentence in the current case should be imposed in a way that accounts for the time he has served on the related case. We further submit that his sentence in the current case should run concurrent to the rest of the sentence he is already serving. To be clear, we are not seeking a downward departure under the Guidelines, which we are precluded from doing pursuant to the plea agreement. Instead, we seek a sentence that comports with the Guidelines and sentencing statute. During plea negotiations we discussed with the government our intention to present an argument under U.S.S.G. § 5G1.3(b). AUSA Hagan Scotten confirmed his understanding that the plea agreement did not preclude us from presenting an argument regarding the previous case and undischarged sentence involving relevant conduct under either that Guidelines section or as a factor to be considered under 18 U.S.C. § 3553(a).

USSG § 5G1.3 provides, in relevant part:

> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct),[1] the sentence for the instant offense shall be imposed as follows:
>
>> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons[2]; and
>>
>> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

USSG § 5G1.3. *See, e.g.*, *United States v. Lucas*, 745 F.3d 626, 628 (2d Cir. 2014) ("The Sentencing Guidelines instruct district courts to run a prison term 'concurrently to the remainder

---

[1] Relevant conduct: "(1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

    (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all acts and omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity;

    that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a).

[2] 18 U.S.C. § 3585 provides that time in detention will be credited toward a term of imprisonment where that time "has not been credited against another sentence." Here, the time Silva has served has been and is being credited against his prior sentence, so it appears that BOP will not credit it against Silva's sentence in the current case.

Nick DiMaria
April 20, 2018
Page 3

of [any] undischarged term of imprisonment' if the recommended 'term of imprisonment resulted from another offense that is relevant conduct to the . . . offense of conviction.' [ ] In other words, when the defendant is serving time on a prior conviction that relates to the new charge, the Guidelines direct that the defendant serve the new sentence parallel to the old." (citing U.S.S.G. § 5G1.3(b).)); *United States v. Rivers*, 329 F.3d 119, 121-23 (2d Cir. 2003) (affirming district court's downward imposition of sentence to reflect time served in undischarged state sentence, which resulted in federal term of imprisonment under five-year statutory mandatory minimum, where state sentence had already been credited against another sentence so was not going to be credited by BOP under 18 U.S.C. § 3585(b)) (collecting cases); *see also United States v. Bannister*, 786 F. Supp. 2d 617, 687 (E.D.N.Y. 2011). As the Supreme Court explained in *Witte v. United States*, the purpose of U.S.S.G. § 5G1.3 in general, and subsection (b) in particular, is to

> attempt to achieve some coordination of sentences imposed . . . with an eye toward having such punishments approximate the total penalty that would have been imposed had the sentences for the different offenses been imposed at the same time (i.e., had all of the offenses been prosecuted in a single proceeding).

515 U.S. 389, 404-05 (1995).

For the foregoing reasons, we respectfully submit that the sentence in the current case should be imposed in a way that accounts for the fact that Silva is already serving a sentence for a previous plea of guilty to conduct that falls within the conspiracy charged in the present case. In doing so, the sentence should account for the time that Silva has already served on his related sentence, and should be imposed concurrent to the time that Silva will serve on his previous related sentence going forward.

Respectfully submitted,

COZEN O'CONNOR

/s/

By:    J. Bruce Maffeo

JM


cc:    AUSAs Geraci, Scotten, and Denton
       Esfrain Silva

# Exhibit C

**Serrill-Robins, Mira**

| | |
|---|---|
| **From:** | Scotten, Hagan (USANYS) <Hagan.Scotten@usdoj.gov> |
| **Sent:** | Wednesday, April 25, 2018 7:53 PM |
| **To:** | Nicolo_DiMaria@nysp.uscourts.gov |
| **Cc:** | Serrill-Robins, Mira; Maffeo, J. Bruce; Geraci, Justina (USANYS); Denton, David (USANYS) |
| **Subject:** | RE: PSR re Esfrain Silva, 17-cr-00438 |

Mr. DiMaria,

The Government writes to briefly address the letter submitted by counsel for defendant Esfrain Silva. The Government agrees that his plea agreement does not bar Silva from arguing for concurrent sentences under 18 U.S.C. § 3553(a). Any argument Silva wishes to offer under Section 5G1.3 of the Guidelines is, however, erroneous.

Section 5G1.3(b) applies where "a term of imprisonment resulted from another offense that is *relevant conduct* to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3" of the Guidelines. The defendant seeks to have his participation in a massive scheme to steal millions of dollars in prescription opiates from New York area pharmacies treated as relevant conduct, so that he might receive a sentence in the current case that runs concurrent to the sentence Judge Carter previously imposed for the pharmacy burglaries. The plea agreement, however, agreed not to treat his burglary of pharmacies as relevant conduct. Relevant conduct is conduct that is used to calculate the defendant's offense level in the current case, as Section 1B1.3 states. The defendant's plea agreement does not include the pharmacy burglaries in calculating his offense level. It thus reflects an agreement that the pharmacy burglaries do not constitute relevant conduct.

The plea agreement gave Silva a significant benefit in not counting the pharmacy burglaries as relevant conduct, because if they were counted, his offense level for purposes of sentencing in this case would be significantly higher. The defendant cannot reasonably ask that the pharmacy burglaries be treated as relevant conduct for purposes of 5G1.3(b) in order to receive concurrent sentences, but not counted as relevant conduct when calculating his offense level. Because the plea agreement agreed not to treat the pharmacy burglaries as relevant conduct, we urge the Probation Office to do the same. Silva's current crime—conducting violent home invasions in which he helped burst into a family's home, tie them up, and terrify his helpless victims— should be punished separately from his burglaries of unoccupied pharmacies.

If you need any further information, please don't hesitate to contact me.

Thanks,

Hagan

Hagan Scotten
Assistant United States Attorney
Southern District of New York
(212) 637-2410

**From:** Nicolo_DiMaria@nysp.uscourts.gov <Nicolo_DiMaria@nysp.uscourts.gov>
**Sent:** Wednesday, April 25, 2018 2:10 PM

**To:** Scotten, Hagan (USANYS) <HScotten@usa.doj.gov>
**Cc:** Serrill-Robins, Mira <MSerrill-Robins@cozen.com>; Maffeo, J. Bruce <JBMaffeo@cozen.com>; Geraci, Justina (USANYS) <JGeraci@usa.doj.gov>; Denton, David (USANYS) <DDenton@usa.doj.gov>
**Subject:** RE: PSR re Esfrain Silva, 17-cr-00438

Thanks for the heads up and information on both ends. My first disclosure is due to my supervisor on Friday so let me know prior to that if there is something you want me to look at. Otherwise we can address and issues during the addendum process prior to the final report.

With Regards,

*Nick DiMaria*
**United States Probation Officer**

Investigations Division | U.S. Probation Office - Southern District of New York
500 Pearl Street 7th Floor, New York, New York 10007
Office: 212.805.5076 | Fax: 646.416.5471 | Mobile: 845.629.2055
E-Mail: Nicolo_DiMaria@nysp.uscourts.gov

-----"Scotten, Hagan (USANYS)" <Hagan.Scotten@usdoj.gov> wrote: -----
**To:** "Serrill-Robins, Mira" <MSerrill-Robins@cozen.com>, "Nicolo_DiMaria@nysp.uscourts.gov" <Nicolo_DiMaria@nysp.uscourts.gov>
**From:** "Scotten, Hagan (USANYS)" <Hagan.Scotten@usdoj.gov>
**Date:** 04/23/2018 06:00PM
**Cc:** "Maffeo, J. Bruce" <JBMaffeo@cozen.com>, "Geraci, Justina (USANYS)" <Justina.Geraci@usdoj.gov>, "Denton, David (USANYS)" <David.Denton@usdoj.gov>
**Subject:** RE: PSR re Esfrain Silva, 17-cr-00438

Officer DiMaria,

The Government does not agree with analysis of 5G1.3 in the defendant's letter and we are discussing to see if we can reach an agreement on the correct legal analysis. Of course probation does its own independent analysis, but we'd ask if you can give us a day or two to get back to you, hopefully with a joint view.

Thanks,

Hagan

**From:** Serrill-Robins, Mira <MSerrill-Robins@cozen.com>
**Sent:** Friday, April 20, 2018 4:54 PM
**To:** Nicolo_DiMaria@nysp.uscourts.gov
**Cc:** Maffeo, J. Bruce <JBMaffeo@cozen.com>; Geraci, Justina (USANYS) <JGeraci@usa.doj.gov>; Scotten, Hagan (USANYS) <HScotten@usa.doj.gov>; Denton, David (USANYS) <DDenton@usa.doj.gov>
**Subject:** PSR re Esfrain Silva, 17-cr-00438

Officer DiMaria,


Please find attached a letter regarding the PSR on Esfrain Silva with respect to the above-referenced case. Have a great weekend,


Mira


 **Mira Serrill-Robins**
**Associate Attorney | Cozen O'Connor**
45 Broadway 16th Floor | New York, NY 10006
P: 212-453-3817 F: 646-461-2044
Email | Map | cozen.com


***Notice:** This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.*